Opinion
HOWATT, P. J.
In this case we are asked to determine whether earnings of a wife, designated as separate property by a prenuptial agreement, are subject to her husband’s creditors’ claims where her earnings are the sole income of the family. We hold that they are not and reverse the order of the lower court.
I. Facts
Leasefirst obtained a judgment against Fred Borrelli. The judgment arose from a dispute over a lease agreement signed by Fred Borrelli only. Fred Borrelli was married at the time he executed the lease.
Fred Borrelli was served with an order to appear for examination. At the debtor’s examination, he testified that he had not worked since 1987. He further testified that his wife, Nancy Borrelli, was employed and earned approximately $30,000 per year. Fred Borrelli testified he and his wife had *Supp. 30 no bank account, nor did they own any personal property. When asked how he lived, Fred Borrelli stated that his wife supported him.
Leasefirst filed a motion for order allowing levy upon the wages or judgment debtor’s spouse. Fred Borrelli filed opposition to this motion and included in his papers a copy of the prenuptial agreement entered into by Fred Borrelli and Nancy Borrelli. Also presented at the hearing was a copy of the lease signed by Fred Borrelli only. The trial court, after argument, found that although the prenuptial agreement characterized Nancy Borrelli’s wages as separate property, Nancy Borrelli was treating her wages as a community property asset by supporting her spouse with her wages. The trial court granted the motion for order allowing levy upon the wages of judgment debtor’s spouse.
II. Discussion
Civil Code section 5110 creates the presumption that all property acquired by a married person is community property. However, Civil Code section 5110.710 provides, “Subject to Sections 5110.720 to 5110.740, inclusive, married persons may be agreement or transfer, with or without consideration, do any of the following: [f] (a) Transmute community property to separate property of either spouse.” Civil Code section 5110.730 further provides, “(a) A transmutation of real or personal property is not valid unless made in writing by an express declaration that is made, joined in, consented to, or accepted by the spouse whose interest in the property is adversely affected.” Thus, married parties can transmute community property into separate property so long as there exists a valid writing. Fred and Nancy Borrelli did so in this case. They executed a prenuptial agreement whereby the earnings of each spouse would be the separate property of that spouse.
Civil Code section 5120.130 provides in pertinent part, “(b) Except as otherwise provided by statute: [f] (1) The separate property of a married person is not liable for a debt incurred by the person’s spouse before or during the marriage.” Civil Code section 5120.140 provides in pertinent part, “(a) Notwithstanding the provisions of Section 5120.130, a married person is personally liable for the following debts incurred by the person’s spouse during marriage: [] (1) A debt incurred for necessaries of life of the person’s spouse while the spouses are living together.”
The trial court held that the explicitly defined separate property of Nancy Borrelli changed to community property and was subject to levy on the debt of the spouse. The court came to this conclusion based on the fact that Nancy Borrelli utilized her wages to support Fred Borrelli and herself. This conclusion is contrary to statutory law. The parties here executed a valid written *Supp. 31 prenuptial agreement transmuting what would be presumed community property into separate property. There is no suggestion that the debt was incurred for the necessaries of life. Therefore, Nancy Borrelli’s separate property is not liable for this debt of her husband.
While Leasefirst may argue that the statutory scheme does not protect innocent third party creditors, Kennedy v. Taylor (1984) 155 Cal.App.3d 126 [201 Cal.Rptr. 779], addressed this contention in a slightly different context. In Kennedy, the husband incurred a debt after separation and third party creditors obtained a default judgment against him. The wife received the former community residence as part of the marital settlement agreement which was incorporated into the judgment. The creditors sought to obtain a lien on the house. The trial court found the residence to be the separate property of the wife and, thus, not subject to satisfaction of the debt. The creditors argued that they should be able to recover against the wife unless they had been affirmatively notified by either spouse at the time the credit was extended that the certain assets would not be available to satisfy the obligation. The creditors argued that it would be unfair to make them inquire regarding marital status or whether assets had been transmuted. The court disagreed. “The trial court reasoned third party creditors can easily avoid the risk of unknown interspousal transfers (and the embarrassment or burden of inquiring about them) by obtaining both spouses’ signatures on notes .... Obtaining both spouses’ signatures is a reasonable burden to place on creditors who later attempt to recover against former community assets.” (Id. at p. 130.)
American Olean Tile Co. v. Schultze (1985) 169 Cal.App.3d 359 [215 Cal.Rptr. 184] came to the same conclusion. The court affirmed an order holding the wife’s separate property (by virtue of a marital separation agreement) was not liable for the business debt of the husband. The court stated, “When, by execution of a marital settlement agreement, a community property business of the spouses becomes the separate property of one of them, a creditor seeking to enforce a business debt incurred thereafter ‘will be restricted to satisfaction from the separate property of the debt spouse, provided: (1) The transmutation agreement was not entered into to defraud an existing creditor of either spouse; and (2) The creditor was not misled to its detriment by the failure of the spouses to inform it that by virtue of an agreement between them the supposed community assets on which the creditor relied were in fact separate assets, [f] A third-party creditor will not be entitled to recover against former community assets transmuted into separate property of the noncontracting spouse since the creditor can easily avoid the risk of unknown interspousal transfers by obtaining both spouses’ signatures on contracts or notes.’ ’’ (Id. at pp. 364-365, fns. omitted.)
*Supp. 32 While Kennedy and American Olean dealt with transmutation by marital settlement agreements and the transmutation in the case at bar was by a prenuptial agreement, the conclusion and result is the same. The third party creditor could have protected itself. It failed to do so and may not now seek recovery from Nancy Borrelli’s separate property.
The order of the trial court permitting levy upon the wages of the nonjudgment debtor spouse is reversed.
Moon, J., and Murphy, J., concurred.